UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ASHLEY POSEY (#511449)                                          CIVIL ACTION

VERSUS

JAMES ROGERS, WARDEN                                            NO. 13-285-JWD-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 2, 2016.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ASHLEY POSEY (#511449)                                         CIVIL ACTION

VERSUS

JAMES ROGERS, WARDEN                                           NO. 13-285-JWD-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The State has filed an opposition to the petitioner's application, and the petitioner has filed a response thereto.  Pursuant to subsequent Orders of the Court dated April 28 and June 2, 2015, respectively (R. Docs. 16 and 19), the petitioner has filed a supplemental memorandum and documentation in support of her application (R. Docs. 17 and 23), and prison administrators have provided supplemental documentation pertinent thereto (R. Docs. 18 and 20).

The petitioner, Ashley Posey, challenges her conviction, entered in 2007 in the Twenty-First Judicial District for the Parish of Livingston, State of Louisiana, on one count of second degree murder.  She contends that she was provided with ineffective assistance of counsel at trial in several respects, that there was insufficient evidence to support the conviction, that the trial court erred in denying a motion to suppress her confession, that she was denied a fair trial because of the disallowance of evidence regarding a plea agreement entered into by her co-defendant, that the trial court erred in denying a motion for mistrial based on prosecutorial misconduct during closing argument, that the trial court erred in failing to compel the state to respond to a bill of particulars which inquired whether the State intended to assert that the

petitioner was the shooter, that she was improperly subjected to a harsher penalty as an accomplice than was the person who committed the shooting, that she was denied a fair trial as a result of the introduction of uncorroborated testimony at trial, that the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that she was subjected to an excessive sentence inasmuch as she received a harsher penalty than did the person who in fact committed the shooting.

## **Factual Background**

The facts, as summarized in the decision of the Louisiana First Circuit Court of Appeal, are as follows: On May 5, 2005, petitioner, Eric Petsch, Steven Durnin, Jacob Walker, and several other individuals, were gathered at Walker's home in Walker, Louisiana. In response to discussions regarding the group's desire to acquire drugs and money, petitioner and Petsch decided to "hit a lick" or commit a robbery, and petitioner suggested Jimmy Morris as the potential target. She told Petsch that Morris, whom she referred to as her uncle, had both drugs and money in his trailer. With Durnin as the driver, petitioner and Petsch traveled to Morris's residence in Big D's Trailer Park in Walker.

Meanwhile, Morris was home alone in his trailer. At approximately 10:00 p.m. there was a knock at the door. Morris asked who was there before opening the door. After the defendant identified herself, Morris opened the door. Immediately thereafter, a single gunshot was fired, hitting Morris in the head. Morris did not survive the shooting. Petitioner and Petsch reentered the vehicle with Durnin, and left the area. Nothing was taken from the victim's residence. Petsch, Durnin, and petitioner were subsequently charged with second degree murder in connection with the victim's death. *State v. Posey*, 08-0743 (La. App. 1 Cir. 9/26/08), 2008 WL 4376811.

**Procedural Background**

The petitioner was charged by a bill of indictment with one count of second degree murder and, after a jury trial conducted in October, 2007, was found guilty as charged. Upon the denial of post-trial motions, she was sentenced, on November 13, 2007, to life imprisonment, without the benefit of probation, parole or suspension of sentence.

Through counsel, the petitioner filed a timely appeal before the Louisiana Court of Appeal for the First Circuit, asserting as error (1) that the evidence was insufficient to support the conviction, (2) that the trial court erred in denying the petitioner's motion to suppress her confession, (3) that the trial court erred in failing to grant a motion for mistrial based upon prosecutorial misconduct during closing argument, (4) that the trial court erred in failing to compel the state to respond to a bill of particulars, (5) that the trial court erred in excluding evidence of a co-defendant's plea agreement, and (6) that the trial court erred in admitting evidence of other bad acts committed by the petitioner. On September 26, 2008, the intermediate state appellate court affirmed the convictions and sentences. *Id.*

According to the petitioner, she thereafter forwarded, on or about October 14, 2008, an application for supervisory review to the Louisiana Supreme Court. According to the records of that court, however, the application was never received.[1] The petitioner asserts that it was not until she made written inquiry to the Louisiana Supreme Court on or about February 25, 2010, approximately sixteen (16) months later, that she allegedly first learned that her writ application had not been received. She then re-submitted her writ application to the Louisiana Supreme

---

[1] In light of the fact that the petitioner's writ application before the Louisiana Supreme Court was never received by that tribunal, this Court requested supplemental briefing and supplemental documentation from the petitioner and from the petitioner's place of confinement, *see* R. Docs. 16 and 19, seeking to determine whether and, if so, when the petitioner submitted her application for mailing to the Louisiana Supreme Court. The Court's findings and conclusions in this case are based upon a review of both the parties' submissions and the supplemental documentation submitted.

Court approximately a month later, on or about March 24, 2010, and by decision issued on April 1, 2011, the Supreme Court denied review, without comment. *State v. Posey,* 10-0718 (La. 4/1/11), 60 So.3d 1243.

Almost a year later, on or about March 26, 2012, the petitioner filed an application for post-conviction relief ("PCR") in the state trial court,[2] contending that she was provided with ineffective assistance of counsel in several respects. After an evidentiary hearing in the state trial court, the petitioner's application was denied on May 14, 2012. The petitioner thereafter sought further review before the Louisiana appellate courts and, on August 24, 2012, and February 8, 2013, respectively, the state courts denied further review. *See State ex rel. Posey v. State*, 12-2074 (La. 2/8/13), 108 So.3d 80.

Finally, on or about April 26, 2013, approximately 2½ months after the denial of supervisory review by the Louisiana Supreme Court, the petitioner filed the instant habeas corpus application in this Court. There is no need for oral argument or for an evidentiary hearing. The State contends that the petitioner's application in this Court is untimely and, in the alternative, that some of the petitioner's claims have not been exhausted through the state courts as mandated by 28 U.S.C. § 2244.

---

[2] Although the petitioner's application for post-conviction relief was docketed as filed in the state trial court on March 28, 2012, the United States Court of Appeals for the Fifth Circuit has instructed that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings. Accordingly, pleadings submitted by a habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for submission to the court, not on the date that the pleadings are ultimately docketed by the receiving court. *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012). Thus, inasmuch as the petitioner apparently signed her state court application on March 26, 2012, and presumably gave it to prison officials for mailing on that date, the Court will utilize that date as the presumptive date of filing. In addition, in hereafter referencing the dates of filing of the petitioner's various pleadings in the state courts and in this Court, the Court will utilize the dates that the petitioner apparently signed her respective pleadings as the dates of filing thereof in the respective courts unless otherwise noted.

## **LEGAL ANALYSIS**

### **The Petitioner's Application Is Untimely**

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date upon which the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). If a petitioner stops the direct appeal process before she has proceeded through all available state courts, "the conviction becomes final when the time for seeking further direct review in the state court expires." *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). After a petitioner has proceeded through all stages of direct appellate review in the state courts, the period of direct review also includes the petitioner's right to seek discretionary review before the United States Supreme Court. As a result, after a ruling by the state's highest court on direct appeal, a petitioner's judgment becomes final when the United States Supreme Court issues a decision denying (usually) discretionary review or, if no application for review is made, upon the conclusion of the 90-day time period for seeking such review. *See id.*

Upon the finality of a petitioner's conviction, the one-year limitations period for filing a federal habeas corpus petition commences to run. The federal limitations statute provides, however, that the time during which a subsequent "properly filed" application for state post-conviction or other collateral review is thereafter "pending" in the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). As a corollary to this rule, any time during which there are no properly filed post-conviction or collateral review proceedings pending before the state courts does count toward the passage of the one-year period. To be considered "properly filed" for

purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), citing *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). A state post-conviction relief application is considered to be "pending" (1) while it is before a state court for review and also (2) during the interval of time after a lower state court's disposition of an application (thirty days in the State of Louisiana, unless an allowable extension is granted) while the petitioner is procedurally authorized by state law to file a timely application for further appellate review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In the instant case, the State asserts that the petitioner's conviction became final on October 26, 2008, thirty days after the decision of the Louisiana Court of Appeal for the First Circuit on September 26, 2008, affirming the petitioner's conviction and sentence on direct appeal. *See State v. Posey, supra*, 2008 WL 4376811. The basis for the State's assertion in this regard is its contention that the petitioner had thirty days after the intermediate appellate court decision within which to file an application for supervisory review before the Louisiana Supreme Court. *See* Louisiana Supreme Court Rule X, § 5(a). The State further contends that the petitioner did not file an application for supervisory review before the Louisiana Supreme Court during that interval and did not in fact file an application for supervisory review before the Louisiana Supreme Court until on or about March 26, 2010, seventeen (17) months after the decision of the intermediate appellate court. Based upon this assertion, the State contends that the one-year limitations period elapsed during the intervening period and that the petitioner's habeas corpus application in this Court is untimely.

In response to the State's assertion, the petitioner contends that she did in fact submit a timely application for supervisory review to prison officials for mailing to the Louisiana

Supreme Court within thirty (30) days of the intermediate appellate court decision. Specifically, she asserts that on October 14, 2008, approximately 2½ weeks after the decision of the intermediate appellate court, she placed her Supreme Court writ application, together with a cover letter addressed to the Clerk of that Court, into the prison mailing system for filing. She contends that pursuant to the "prison mailbox rule," her writ application should therefore be deemed to have been filed on that date. Although the Louisiana Supreme Court apparently never received or docketed the referenced writ application, the petitioner asserts that she did not learn of such non-receipt until she inquired regarding the status of her writ application approximately 16 months later (by letter dated February 25, 2010) and was informed by the Supreme Court (by letter dated March 2, 2010) that the application had never been received. The petitioner then re-submitted her writ application to the Louisiana Supreme Court on or about March 24, 2010, three weeks later, and the Court thereafter denied same, without comment, on April 1, 2011. *State v. Posey*, *supra,* 60 So.3d at 1243. The petitioner contends that, as a result, the direct review of her conviction did not conclude in the state courts until April 1, 2011, and her conviction did not in fact become final until ninety days thereafter on June 30, 2011, allowing for the 90-day period for direct review in the United States Supreme Court. Accordingly, she asserts that her federal habeas corpus application submitted within a year thereafter, disregarding the time that her subsequent post-conviction review proceedings were pending before the state courts, is timely. Ultimately, as discussed hereafter, this Court rejects the petitioner's contentions relative to the timeliness of her federal application before this Court.

      The seminal case in this Circuit on the current issue is *Stoot v. Cain*, 570 F.3d 669, 671 (5th Cir. 2009). In *Stoot*, the Court addressed the prison mailbox rule and reiterated that a habeas corpus application is deemed to be filed when it is handed over to prison officials for mailing to a

court.  The Court then addressed the effect that is given to a prisoner's pleading that is properly submitted to prison officials for mailing but, for unknown reasons, is never received or docketed by the addressee court.  Under these circumstances, the Court concluded that an extension of the "federal prison mailbox rule" was appropriate and determined that a prisoner's state habeas pleading should be deemed filed on the date that the prisoner properly submits same to prison officials to be mailed, "regardless of whether the pleading actually reaches the court."  *Id.* at 672.  The Court cautioned, however, that "[u]nder such a rule, it is of course incumbent upon the petitioner to diligently pursue [the] petition...[and a] failure to inquire about a lost petition is strong evidence that the petition was, in fact, never sent."  *Id.*  In *Stoot*, the Court did not address the level of proof required to establish that a petitioner's pleading has been timely submitted for mailing to a court through the prison mailing system but, instead, remanded the matter to the lower court for an appropriate factual finding, noting that a "reference to prison mail logs usually answers the question of when the petition was actually mailed."  *Id.*  The *Stoot* Court further noted that the petitioner in that case had attached a copy of an Inmate Request for Legal/Indigent Mail that supported the inmate's assertions regarding the date of mailing.  Finally, the Court stated that "[i]f the district court finds that Stoot submitted a petition, even one that was never received, ... then his Louisiana Supreme Court petition was timely, his federal application is not [time-]barred, ... and his habeas claims must be considered on the merits."  *Id.*

Subsequent to *Stoot, supra*, courts have looked to various materials and documentation in seeking to determine whether a habeas petitioner has sufficiently established that pleadings were properly and timely submitted for mailing to an addressee court, notwithstanding that the court ultimately did not receive them.  In cases where the courts have found the showing to be sufficient, the courts have looked to prison mail logs, copies of inmates' requests for legal or

indigent mail, date-stamps on court records, postal receipts reflecting mailings on the date in question, and certified mail receipt forms.  *See Lewis v. Cain,* 2009 WL 3367055 at *2 (E.D. La. Oct. 16, 2009) (prison postal receipt); *Major v. Cain*, 2010 WL 2518969 at *2 n.2 (M.D. La. Apr. 6, 2010) (date-stamp); *Griffin v. Cain,* 2010 WL 2522991 at *2 (E.D. La. May 11, 2010) (certified mail receipt); *Chenevert v. Cain*, 2012 WL 5054729 at *7 (E.D. La. Aug. 22, 2012) (indigent mail request).  In addition, the courts have noted that affidavits and/or sworn attestations executed by inmates under penalty of perjury in accordance with 28 U.S.C. § 1746 may be considered if warranted.  *See Mitchell v. Warden, Louisiana State Penitentiary,* 2014 WL 7178984 at *2-3 (W.D. La. Dec. 16, 2014); and *Hills v. Cain*, 2015 WL 1004197 at *2-3 (M.D. La. March 6, 2015).  When such documentary evidence is lacking, however, courts have generally concluded that the inmate has failed to make the necessary showing.  *See Fruga v. Andrews*, 2011 WL 6000836 at *4 (E.D. La. Aug. 16, 2011); and *Williams v. Cain,* 2014 WL 43743336 at *4-5 (E.D. La. Sept. 3, 2014).

     In the instant case, the Court finds that there is insufficient evidence to support the petitioner's assertion that she properly submitted her application for supervisory review to prison officials for mailing to the Louisiana Supreme Court on October 14, 2008.  The petitioner's proof consists only of a copy of correspondence in the certified record of the state *district* court bearing the address of the Louisiana Supreme Court clerk's office and the referenced date of October 14, 2008, and enclosing a copy of the petitioner's Supreme Court writ application that she apparently *intended* for consideration by the state Supreme Court.  It appears, however, that the referenced correspondence and application were never received or filed in the Louisiana Supreme Court, and although the petitioner makes a conclusory assertion that she properly submitted the pleading for mailing to the Supreme Court on the referenced date, she is unable to

establish that she did so.³ In fact, her assertion is belied by the only prison records available for review by this Court, which records consist of copies of the prison's Outgoing Legal Log for the pertinent time period. *See* R. Doc. 18-1 at p. 10. This Log reflects that during this period there were only two (2) legal mailouts on the petitioner's behalf, both on October 15, 2008, and the addresses provided by the petitioner for those legal mailouts did not include the address of the Louisiana Supreme Court clerk's office. Instead, the Log reflects that the mailouts were addressed for mailing to the state district court clerk's office (hence the copy in the district court record) and to the district attorney's office for the same judicial district. There is no indication in the referenced Log that the petitioner submitted a third legal mailout for mailing to the Louisiana Supreme Court at or around that time. Although the petitioner may have *intended* to send her writ application to the Louisiana Supreme Court on or about October 14, 2008, as indicated by the cover letter that was included with the mailout that was in fact sent to the state district court, she apparently failed or, through negligence or inadvertence, neglected to do so.

Based on the foregoing, the Court finds that the only reliable available evidence in this case reflects that the petitioner provided packets containing copies of her proposed Supreme Court writ application to prison officials for mailing in October, 2008, but that she provided, with those packets, only the addresses of the state district court clerk's office and the state district attorney's office. The evidence does not reflect that she provided a similar packet addressed to the Louisiana Supreme Court, even if she intended to do so. This error is attributable to the petitioner. The petitioner has provided no reason whatever to question the veracity or authenticity of the prison mailroom records that show that only two mailouts were

---

³ The supplemental documentation provided by the prison reflects only that the Clerk of Court for the Twenty-First Judicial District Court, Parish of Livingston, received a "Copy of Application for Sup Writ" on October 21, 2008. It does not reflect mailing to or receipt of the same by the Louisiana Supreme Court. *See* R. Doc. 23, p. 5

undertaken on the petitioner's behalf, both on October 15, 2008, and that neither was addressed to the Louisiana Supreme Court.  There is also no reasonable basis for concluding that the mailroom personnel, in apparently complying with the petitioner's request to undertake mailouts on her behalf on that date, had any reason to disregard a third such packet – if it had been proffered at or around the same time – addressed to a third addressee.  As a result, it appears that the petitioner's writ application was not in fact sent to the Louisiana Supreme Court at that time.  Although the Court has afforded the petitioner an opportunity to supplement her contentions and to support her assertions with "an affidavit or statement submitted under penalty of perjury," *see* R. Doc. 16, the petitioner has not done so.  Thus, all that the Court has before it is the petitioner's unsworn conclusory assertion that she mailed the referenced writ application to the Louisiana Supreme Court on or about October 14, 2008.  The only reliable evidence before the Court, therefore, is the prison logbook entries, and the Court in *Stoot v. Cain, supra*, 570 F.3d at 672, noted that "reference to prison mail logs usually answers the question of when the petition was actually mailed."  Accordingly, the Court concludes that the petitioner has only established that she sent her writ applications to addresses other than that of the Supreme Court in October, 2008.  This does not establish her entitlement to relief in this case.  A state application filed in the wrong court does not toll the statute of limitations.  *Sibley v. Culliver,* 377 F.3d 1196, 1202–03 (3rd Cir. 2004); *Handy v. Everett,* 12 Fed. App'x 804 (10th Cir. 2001); *Cunningham v. Payne*, 2006 WL 1875890, at *5 (W.D. Wash. June 5, 2006); *Williams v. Crosby,* 2006 WL 1823437, at *3 (M.D. Fla. June 30, 2006).

In addition to the foregoing, the Court finds that the petitioner has not shown that she acted with appropriate diligence, as required by the *Stoot* Court, in pursuing relief in this case.  By her own admission, she waited sixteen months, until March, 2010, to inquire about the status

of her writ application before the Louisiana Supreme Court. "A failure to inquire about a lost petition is strong evidence that the petition was, in fact, never sent." *Stoot*, 570 F.3d at 672.

Although petitioner apparently learned at that time that her writ application had not been filed and although she resubmitted her application to the Supreme Court approximately three weeks later, on or about March 26, 2010, she apparently took no action at that time to make inquiry or obtain documentation from prison officials to corroborate her assertion that she had submitted an earlier writ application to the Supreme Court in October, 2008. Such documentation – which may then have been available – may have included one or more requests for legal or indigent mail on her behalf and/or records reflecting expenditures for postage in the prison business office or at the prison canteen for mailing to the Louisiana Supreme Court. Unfortunately, however, because of the prison's retention policy, those records are no longer available for review. *See* R. Doc. 18. Thus, the petitioner's failure to make earlier inquiry and to then seek to preserve such evidence may be seen to reflect a lack of diligence on her part that does not now weigh in her favor.

Having found the petitioner's application to be untimely, this Court must dismiss same pursuant to 28 U.S.C. § 2244(d) unless the petitioner can establish that she is entitled to equitable tolling. The record does not reflect that there is any basis for equitable tolling in this case. In this regard, the one-year federal limitations period is subject to equitable tolling only "in rare and exceptional circumstances." *See United States v. Patterson,* 211 F.3d 927, 928 (5th Cir. 2000). The doctrine of equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson,* 184 F.3d 398, 402 (5th Cir. 1999). "A petitioner's failure to satisfy

the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson,* 442 F.3d 872, 875 (5th Cir. 2006).

Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. DiGuglielmo, supra,* 544 U.S. at 418. Ignorance of the law, lack of knowledge of filing deadlines, a temporary denial of access to research materials or the law library, and inadequacies in the prison law library, are not generally sufficient to warrant equitable tolling. *Tate v. Parker,* 439 Fed. Appx. 375, 376 (5th Cir. 2011); *Felder v. Johnson,* 204 F.3d 168, 171–2 (5th Cir. 2000). Further, equitable tolling "is not intended for those who sleep on their rights." *Manning v. Epps,* 688 F.3d 177, 184 (5th Cir. 2012). Thus, a federal habeas petitioner is required to act with diligence and alacrity both during the period allowed for the filing of state post-conviction review proceedings and after the denial thereof by the state appellate courts. *See Ramos v. Director,* 2010 WL 774986, *4 (E.D. Tex. 2010). "The diligence required for equitable tolling purposes is reasonable diligence, ... not maximum feasible diligence," *Holland v. Florida,* 560 U.S. 631, 653 (2010) (internal quotation marks omitted), and equitable tolling decisions "must be made on a case-by-case basis." *Id.* at 649–50.

As explained above, the petitioner has not shown that she acted diligently in pursuing her rights in the state courts. The petitioner did not inquire as to the status of her application for supervisory review to the Louisiana Supreme Court for approximately 16 months. Then, almost a year elapsed between the denial of writs by the Louisiana Supreme Court and the filing of the petitioner's PCR application. Such extended periods of inactivity cannot be considered reasonable diligence. Accordingly, the petitioner has failed to show such diligent conduct as would warrant equitable tolling in connection with her habeas corpus application.

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be dismissed, with prejudice, as untimely. It is further recommended that, in the event that the petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on August 2, 2016.

　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**